IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-03133-01-CR-S-MDH |
| | ) |
| RYON L. WOODY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Ryon L. Woody's Second Motion to Suppress Evidence and Statements. (Doc. 50). The magistrate judge submitted a Report and Recommendation on the Motion. (Doc. 75). For the reasons set forth in this order, the Report and Recommendation is adopted and the Second Motion to Suppress Evidence and Statements is **DENIED**.

## BACKGROUND

Defendant is charged by Indictment with one count of conspiracy to manufacture 100 or more marijuana plants between June 30, 2017 and October 17, 2018 and one count of knowingly possessing firearms while knowing he was an unlawful user of a controlled substance. (Doc. 1).

He moves for suppression of "evidence seized and any statements made as a result of a search conducted on or about October 17, 2018, of the premises and real estate known and numbered as 8979 N. State Highway V, Ash Grove, Greene County, Missouri." (Doc. 50 at 1). In support, Defendant argues the search was unlawful because the affidavit supporting the application for a search warrant contained information obtained from a warrantless search based upon consent given by a person "who had no authority to give consent." *Id*. Defendant also argues the warrant fails because it was based on the unsworn and hearsay statements of another person "who had contemporaneously trespassed on the property without authorization." *Id*. at 2. The Government

filed Suggestions in Opposition, and Defendant filed Reply Suggestions. (Docs. 62, 64). An evidentiary hearing was conducted on October 21, 2020. (Doc. 69).

The events at issue took place on two separate but adjacent tracts of land on the west side of North State Highway V, north of the city of Ash Grove in Greene County, Missouri. The northernmost tract, which the undersigned will refer to as the "northern 35 Medley tract," covers 35 acres primarily to the north and east of the creek known as "Clear Creek" and covers the 9100 block of North State Highway V. The southernmost tract, which will be referred to as the "southern 35 Medley tract," is also 35 acres in size, but is south of Clear Creek and contains a vacant residence with the address 8979 North State Highway V, Ash Grove, Missouri. During the time period at issue, both tracts were owned by Rick Medley, although the southern 35 Medley tract was under a contract for deed with Defendant and his wife, Jamie Woody, as buyers.

**a. Events as to the northern 35 Medley tract on October 14, 2018**

On the afternoon of Sunday, October 14, 2018, Sergeant Allen Bayer, an investigator for the Greene County Sheriff's Office ("GCSO"), received a call from the Patrol Division stating that a citizen had come across a questionable package in the ditch on the west side of North State Highway V north of Ash Grove, Missouri, next to the northern 35 Medley tract. At around 2:00 to 3:00 p.m., Sgt. Bayer arrived at the location, where he met Deputy Ryan Dewey, who had also responded to the call. Upon arrival, Sgt. Bayer observed a brown rolled-up tarp containing marijuana plants, stalks, and leaves in the ditch eight feet from the highway, outside the northern 35 Medley tract fence. Deputy Dewey told Sgt. Bayer that he had observed two other similar rolled-up tarps – one about 30-35 yards to the west of the first tarp, inside the fence of the northern 35 Medley tract, and the other to the south of the first tarp, on the side of the highway near the bridge over Clear Creek. At this point, Sgt. Bayer called for additional officers, including Detective

Gregory Tiller of the GCSO, to assist in the recovery of evidence. Sgt. Bayer then conducted research as to the ownership of the fenced property to the west of the highway. He determined that the property, the northern 35 Medley tract, was owned by Rick Medley. Sgt. Bayer contacted Mr. Medley by phone, advised him of the situation, and asked for permission to enter the northern 35 Medley tract to recover the additional rolled-up tarps they had seen and to also search for additional tarps or active grow locations. Mr. Medley granted verbal permission to do so.

At around 4:00 p.m., Det. Tiller arrived on the scene. Shortly thereafter, Sgt. Bayer, Det. Tiller and other officers entered the northern 35 Medley tract, where they located at least three more bundles of marijuana. They also located standing marijuana plants that were still growing, a pile of marijuana plants that had been cut down, and gardening equipment, including buckets containing grow materials or chemicals, shovels, rakes, electrical pumps, rope, and tape. The officers confined their search to areas north and east of Clear Creek. The officers seized the marijuana, buckets of growing materials and equipment and transported it back to the GCSO.

**b. Events as to the southern 35 Medley tract on October 14-15, 2018**

At least one hour later, after the sun had set, Det. Tiller returned to canvas the area where the first tarp had been found. He drove up and down State Highway V and some of the farm roads looking for anything that caught his attention, such as a person returning to retrieve the marijuana left on the side of the highway. Det. Tiller eventually drove onto the driveway of 8979 North State Highway V, on the southern 35 Medley tract. He knew this was a vacant house, as its doors were wide open and falling in. As he approached the house, he saw two unoccupied vehicles parked just to the north and west of the residence on the driveway. The first vehicle was a blue Chevy or GMC truck and the second vehicle was a red Dodge truck. From dispatch, Det. Tiller learned that one vehicle was registered to a Tyler Partlow and the other was registered to a Keenan Scott, but he

did not locate either of those persons at that time. Because Det. Tiller did not know why the empty vehicles were at the vacant house, he asked dispatch to send another deputy to the location for safety reasons and engaged his emergency lights. In addition, Det. Tiller learned from dispatch that this property, the southern 35 Medley tract, was also owned by Mr. Medley. Det. Tiller called Sgt. Bayer and told him what was transpiring.

Sgt. Bayer then recontacted Mr. Medley to tell him about the two vehicles at the vacant house on the southern 35 Medley tract. Mr. Medley advised Sgt. Bayer that he was selling the southern 35 Medley tract under a contract for deed to Defendant and Jamie Woody. Sgt. Bayer did not ask Mr. Medley for consent to search the southern 35 Medley tract. Instead, he contacted Det. Tiller and informed him that the southern 35 Medley tract was being sold under a contract for deed to Defendant and Jamie Woody.

After receiving this information, Det. Tiller located a phone number for Jamie Woody and called her. She confirmed that she and her husband, Defendant, were in the process of purchasing the southern 35 Medley tract. She also stated that she was not familiar with either the blue Chevy/GMC truck or the red Dodge truck on the property, but Defendant had been there earlier in the day and she would contact him to determine if anybody should be there. She did not ask the officers to leave the property.

By this point, a deputy had arrived at 8979 North State Highway V. Det. Tiller and the deputy proceeded towards the vacant house. As they approached, they were able to see another smaller building under construction behind the vacant house. They knocked on this second building's door but received no response. They looked in the second building's windows but did not see anybody.

During this same time period, Det. Tiller received a voicemail from Ms. Woody, wherein she stated had contacted Defendant, who told her that one of his friend's vehicles had broken down and had been left on the property. Because this voicemail referred to only one vehicle, Det. Tiller and the deputy walked down a path to the west, away from the vacant house, to try to locate any persons on the property for an unknown reason. About 100 yards down the path, they came to an old abandoned barn. Det. Tiller observed two more vehicles near the barn – a black GMC truck, later determined to be registered to Defendant, and a small silver SUV, later determined to be registered to a Martin Weber. As Det. Tiller approached the barn and two vehicles, he could smell an odor he identified as marijuana. From outside the barn, looking up at the open loft door, Det. Tiller saw what he believed to be marijuana plants hanging in the loft. At this point, Det. Tiller contacted Sgt. Bayer, who told him to secure the location, as he would apply for a search warrant. Det. Tiller and the deputy conducted a protective sweep of the barn, looking for any persons therein, but found nobody. While conducting the sweep, Det. Tiller saw plastic bags with marijuana sticking out of the tops on the main level of the barn. The officers did not seize anything during the sweep.

Sgt. Bayer filed a written application for a search warrant with a verified affidavit in support, stating as follows:

> On Sunday, October 14, 2018, Greene County Sheriff's Deputies responded to a call for service in reference to abandoned property located roadside near Clear Creek Bridge on State Highway V, Ash Grove, Missouri. Upon investigation, a large amount of Marijuana was located rolled up in a tarp laying just over the side of the fence. A search of records showed the property owner to be Rick Medley. Mr. Medley was contacted by telephone and verbal consent was given to go on the property to recover the items. Walking the creek line on the south end of the property multiple tarps with Marijuana plants rolled up were located to include electric pumps, grow chemicals, and gardening tools. These items were collected and transported to the Greene County Sheriff's Office. Greene County Detective Greg Tiller observed vehicles parked at what appeared to be a vacant residence on the south side of the creek. I contacted Mr. Medley since the records indicated he

> owned that property as well. Mr. Medley said he has persons under contract for Deed for the property, namely Jamie and Ryan (sic.) Woody. I relayed this information to Detective Tiller who attempted to make contact with the persons belonging to the vehicles parked at the residence. The main residence is an open vacant structure that is uninhabited. Directly to the west behind the residence, is a structure under construction and uninhabited as well. Detective Tiller observed more vehicles parked to the west at a barn on the same property. Detective Tiller said when he walked over to the barn he could not see any persons present. In plain view through the open doors and missing boards on the side of the barn, Detective Tiller could clearly see a large amount of Marijuana plants hanging to dry inside the barn. Detective Tiller could also see in the open bed of the truck parked at the barn was a large amount of Marijuana leaves and buds. Detective Tiller knew this to be Marijuana based on his training and experience.

(Government's Exhibit #6). Just after midnight on October 15, 2018, a Judge of the Circuit Court of Greene County reviewed the application and issued a search warrant for the location "commonly known 8979 N. State Highway V, Ash Grove, and Greene County, Missouri[,] described as a single-family residence [with] a structure currently under construction [to the west], and a barn further to the west." *Id*.

In the early morning hours of October 15, 2018, officers executed the warrant at 8979 N. State Highway V. They located and seized several marijuana plants in the barn, some plants hanging from cables in the loft, some plants laying on the floor of the loft in plastic tarps, and some plants packaged in lawn-size garbage bags.

## STANDARD

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. *See* U.S. Const. amend. IV; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). Generally, evidence found as a result of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011).

## DISCUSSION

Defendant raises two arguments for suppression. First, he argues that the search of 8979 N. State Highway V, Ash Grove, Missouri, and evidence and statements made as a result of the search was unlawful because the information contained in [Sgt.] Bayer's affidavit supporting the application for a search warrant was obtained from a warrantless search that was based on a consent to search given by Rick Medley, who had no authority to give consent. (Doc. 50 at 1). Second, Defendant briefly argues that the search warrant was "based on the testimony of another person's unsworn and hearsay testimony who had contemporaneously trespassed on the property without authorization." *Id*. at 2.

**A. The search at 8979 N. State Highway V was pursuant to a valid search warrant**

Defendant's motion focuses almost entirely on his claim that the information supporting the search warrant application "was obtained from a warrantless search that was based on a consent to search given by Rick Medley, who had no authority to give consent." (Doc. 50 at 1). Defendant reasserts this claim in his reply, arguing that "the warrant application was improperly based on illegally obtained evidence gathered in a warrantless search of the premises." (Doc. 64 at 1).

The Government contends, and this Court agrees, that no search of the 8979 N. State Highway V property was conducted pursuant to Medley's consent. Instead, the search was conducted under a valid search warrant. The Report and Recommendation concludes that the evidence shows that the officers involved confined their movements to the driveway of the vacant house and pathway to the west to the barn, knocked on doors and looked in open door and windows prior to the issuance of the warrant. (Doc. 75 at 9).

"[W]here a legitimate law enforcement objective exists, a warrantless entry into the curtilage is not unreasonable under the Fourth Amendment, provided that the intrusion upon one's

privacy is limited." *Bearden*, 780 F.3d at 893 (citing *United States v. Weston,* 443 F.3d 661, 667 (8th Cir. 2006). "[N]o Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors – such as driveways, walkways, or similar passageways." *United States v. Wells,* 648 F.3d 671, 679 (8th Cir. 2011) (quoting *United States v. Reed,* 733 F.2d 492, 501 (8th Cir. 1984)). Also, "premises which are vacant at the time searched are [] less protected constitutionally than are occupied premises." *United States v. Agrusa*, 541 F.2d 690, 697 (8th Cir. 1976).

Here, Det. Tiller had a legitimate law enforcement objective, canvassing the area for suspicious activity following the discovery of the marijuana on the northern 35 Medley tract earlier that day. When Det. Tiller drove up the driveway of a nearby vacant house, 8979 N. State Highway V on the southern 35 Medley tract, he restricted his movement to an area made accessible to visitors. As Det. Tiller approached the vacant house, he observed two parked and unoccupied vehicles. Thus, Det. Tiller now had another legitimate law enforcement objective, investigating the presence of these vehicles at a house that was clearly vacant, with doors open and falling inwards. Det. Tiller called for backup and activated his emergency lights. Det. Tiller then determined that neither vehicle was registered to the current owner of the southern 35 Medley tract, Mr. Medley, and that Mr. Medley was selling the southern 35 Medley tract to Defendant and Ms. Woody under a contract for deed. Det. Tiller then spoke with Ms. Woody, who told him she was unfamiliar with the two vehicles parked on the driveway. At this point, Det. Tiller had yet to determine why the two vehicles were parked at the vacant house. A deputy then arrived, and he and Det. Tiller walked towards the vacant house to attempt to locate the vehicles' drivers. As they approached, they saw a second smaller structure under construction behind the vacant house. They knocked on the second structure's door and looked in its windows but found no persons. See

*United States v. Raines*, 243 F.3d 419, 420 (8th Cir. 2001) (finding no violation by officer in knocking on door while pursuing legitimate law enforcement objective.)

Det. Tiller was pursuing legitimate law enforcement objectives, first in conducting further investigation regarding the marijuana seized earlier that day, then investigating the unidentified vehicles parked at a vacant house nearby. The officers restricted their movements to the driveway of the vacant house and exterior of the vacant house, which they did not enter, and the exterior of the nearby structure under construction, where they knocked but did not enter. Given these circumstances, the Court finds that no Fourth Amendment search took place at that time.

After this initial activity, Ms. Woody left a voicemail for Det. Tiller, telling him that one of the vehicles was left there by a friend of Defendant. As this resolved the presence of only one of the two vehicles, the officers still had a legitimate law enforcement objective as to the second as yet unidentified vehicle. They proceeded down an open pathway to the west, continuing to look for the driver of the second vehicle. See *Raines*, 243 F.3d at 421-422 (finding no Fourth Amendment violation where, after knocking on the front door and receiving no answer, officer entered open backyard in good faith effort to perform legitimate law enforcement objective). About 100 yards down the pathway, the officers came upon a barn that at first appeared to be abandoned. No evidence was presented as to any fence surrounding the vacant house that also enclosed the barn, nor was evidence presented that any gates prevented the officers from walking on the pathway to the barn.

Although "[t]he Fourth Amendment protects people from unreasonable searches of their home and buildings within the home's curtilage, [] police officers may enter a resident's property to observe buildings located outside the home's curtilage." *United States v. Mooring*, 137 F.3d 595, 596 (8th Cir. 1998) (citing *United States v. Dunn*, 480 U.S. 294, 300-04 (1987)). Factors to

consider in determining whether an area is within a house's "curtilage" include "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by." *Dunn*, 480 U.S. at 301.

The barn was approximately 100 yards away from the vacant house, which had no fence or enclosure around it. The barn at first appeared to be abandoned, though it was later determined that it was used to tore marijuana plants. Lastly, there were no measures taken that would have prevented persons from proceeding on the path from the driveway of the vacant house to the barn. Accordingly, the four factors outlined in *Dunn* support the conclusion that the barn was not a part of the curtilage of the vacant house, and the officers did not conduct a search within the meaning of the Fourth Amendment by approaching it.

Lastly, when Det. Tiller approached the barn, he observed two more vehicles and smelled marijuana. When he looked up at the open loft door of the barn, he was able to see hanging plants that he believed to be marijuana. Under the plain view doctrine, officers may "seize evidence without a warrant when the initial intrusion is lawful, the discovery of the evidence is inadvertent, and the incriminating nature of the evidence is immediately apparent." *Raines*, 243 F.3d at 422. Upon seeing the marijuana in plain view through the open loft door of the barn, Det. Tiller did not seize anything, but instead called Sgt. Bayer, who advised him to secure the property so that he could apply for a search warrant. Det. Tiller and the deputy conducted a valid protective sweep of the barn for any persons therein but did not seize any marijuana. See *United States v. Ruiz-Estrada*, 312 F.3d 398, 404 (8th Cir. 2002) ("The act of securing [a property] while awaiting a search warrant comports with the Fourth Amendment.") Once the search warrant was issued, the officers

executed a search of 8979 N. State Highway V and seized evidence in accordance with the scope and terms of the warrant.

In analyzing the factual circumstances, the Report and Recommendation found, and this Court agrees, that the officers did not conduct any Fourth Amendment search of 8979 N. State Highway V prior to the issuance of the search warrant.

**B. The search warrant does not fail for alleged reliance on hearsay testimony**

Defendant argues in his initial motion that the search warrant issues was "based on the testimony of another person's unsworn and hearsay testimony who had contemporaneously trespassed on the property without authorization." (Doc. 50 at 2). While not expressly noted, the Court assumes that Defendant is referring to the following observations, attributed to Det. Tiller, in Sgt. Bayer's verified affidavit in support of the application for search warrant:

> Greene County Detective Greg Tiller observed vehicles parked at what appeared to be a vacant residence on the south side of the creek. … Detective Tiller [] attempted to make contact with the persons belonging to the vehicles parked at the residence. … Detective Tiller observed more vehicles parked to the west at a barn on the same property. Detective Tiller said when he walked over to the barn he could not see any persons present. In plain view through the open doors and missing boards on the side of the barn, Detective Tiller could clearly see a large amount of Marijuana plants hanging to dry inside the barn. Detective Tiller could also see in the open bed of the truck parked at the barn was a large amount of Marijuana leaves and buds. Detective Tiller knew this to be Marijuana based on his training and experience.

(Government's Exhibit #6)

Defendant's argument that Det. Tiller "had contemporaneously trespassed on the property without authorization," is unfounded as discussed above. Defendant's argument that the warrant affidavit contains hearsay does not affect its credibility. First, the Rules of Evidence regarding hearsay do not apply to search warrant applications. *See* Fed. R. Evid. 1101(d)(3). Rather, a judge reviewing a warrant application must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of

knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (cleaned up). Hearsay evidence can serve as the basis for a warrant if there is a "substantial basis for crediting the hearsay." *United States v. Blaylock*, 535 F.3d 922, 927 (8th Cir. 2008) (*citing United States v. Ventresca*, 380 U.S. 102, 108 (1965)). In addition, law enforcement officers may rely upon information provided by other law enforcement officers, if said reliance is reasonable. See *Doran v. Eckold,* 409 F.3d 958, 965 (8th Cir. 2005), citing *United States v. Hensley,* 469 U.S. 221, 232 (1985); see also *United States v. Wells,* 347 F.3d 280, 287 (8th Cir. 2003), quoting *United States v. Horne,* 4 F.3d 579, 585 (8th Cir.1993) ("[P]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication."). Lastly, a reviewing court should pay "great deference" to an issuing judge's probable cause determination. *Gates*, 462 U.S. at 236, 238-239.

In the warrant affidavit, Sgt. Bayer specifically refers to communications with his fellow officer, Det. Tiller, stating, "I relayed this information to Detective Tiller," and "Detective Tiller said … [.]" Accordingly, Sgt. Bayer's reliance on Det. Tiller's observations in the probable cause section of the warrant affidavit appears to be reasonable. Therefore, the fact that some of the information that Sgt. Bayer relied upon was provided by Det. Tiller, as opposed to his own observation, does not invalidate the reviewing judge's decision to issue the search warrant.

C. **Fruit of the poisonous tree**

Defendant moves for the suppression of any statements as fruit of the poisonous tree. (Doc. 72 at 3-4). Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the admission of evidence obtained directly or indirectly through the exploitation of police illegality. *See Wong*

*Sun v. United States*, 371 U.S. 471, 484-88 (1963). As discussed above, however, there was no unlawful search or seizure. Consequently, Defendant's fruit of the poisonous tree argument is unsupported.

## CONCLUSION

For the reasons set forth above, the Report and Recommendation is adopted and Defendant's Second Motion to Suppress Evidence and Statements is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 26, 2021                                          */s/ Douglas Harpool*
                                                                   **DOUGLAS HARPOOL**
                                                                   **United States District Judge**